# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

GENSUN JOHNSON,          )
                          )
        Petitioner,      )
                          )
     v.                  )     Case No. 4:13-CV-1278 RWS NAB
                          )
TROY STEELE[1], et al.,      )
                          )
        Respondents.   )

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Gensun Johnson's (Johnson) Petition for Writ of Habeas Corpus. [Doc. 1.] Respondents Troy Steele and Chris Koster (Respondents) filed a response. [Doc. 17.] Johnson filed a Reply Brief. [Doc. 26.] This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). [Doc. 7.] For the reasons set forth below, the undersigned recommends that the Petition be denied.

## I.     Background

On May 3, 2006, Johnson was charged in an indictment with first degree murder, first degree assault, and two counts of armed criminal action. (Resp't Ex. B at 15-16.) Johnson's first trial in March 2008 ended in a mistrial. (Resp't Ex. B at 7.) A second trial was held in July 2008 and the jury found Johnson guilty on all counts. (Resp't Ex. B at 48-50.) The trial court sentenced Johnson to life without probation or parole for the first degree murder charge and life in prison for the armed criminal action counts. (Resp't Ex. B at 55, 57.) The trial court sentenced Johnson to seven years imprisonment for the second degree assault conviction.

---

[1] During the pendency of the Petition, Johnson notified the Court that he was transferred to the Eastern Reception, Diagnostic and Correctional Center. [Doc. 27.] Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Respondent is the state officer who has custody. Therefore, the Clerk of Court is ordered to add Troy Steele as the Respondent and remove Jay Cassady's name.

(Resp't Ex. B at 56.) The first degree murder and armed criminal action convictions for Counts I and II are to be served concurrently. (Resp't Ex. B at 55.) The first degree assault and armed criminal action convictions for Counts III and IV are to be served concurrently to each other and consecutively to Counts I and II. (Resp't Ex. B at 56-57.)

Viewing the facts in the light most favorable to the verdict, the following evidence was adduced at trial.[2] On June 7, 2005, Johnson fired six shots into the car in which Elsondo Brooks and Antonio Moore were sitting, killing Brooks and injuring Moore. Robert Gill, sitting in the back seat of the car, was able to get into the front seat and drive away. Danielle Russell saw Johnson fire the shots. Russell identified Johnson from a photo lineup as the shooter. Gill gave a description of Johnson as well. Four days after the murder, Officer John DeBisschop testified for the State that while on routine duty in a marked car, he observed Johnson driving when Johnson observed him, he ducked arousing DeBisschop's suspicion and a high-speed chase ensued. During the chase, DeBisschop saw Johnson throw a gun from the window of the vehicle. The chase ended when Johnson exited the vehicle in an attempt to enter a residence but was subdued and arrested. The gun was photographed, retrieved, and introduced into evidence at trial. Detective David Menendez testified for the State that at least one of the bullets seized from the morgue during Brooks' autopsy could have been fired from the weapon.

## II.    Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that

---

[2] These facts are taken directly from the Supplemental Memorandum accompanying the Missouri Court of Appeals decision in Johnson's direct appeal. *See* Resp't Ex. E at 4. A state court's determination of a factual issue made by a State court shall be presumed to be correct. 28 U.S.C. § 2254(e).

his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 133 S.Ct. 1911, 1917 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established federal law refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "In other words, clearly established federal law under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* at 72. To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme

Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407–408). "A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Penry*, 532 U.S. at 793. "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

## III.    Discussion

Johnson presents ten claims for review. Claims one through four assert trial court error. Johnson contends that the trial court erred in the admission of testimony regarding the high speed chase with police and the retrieval of the gun after the high speed chase. He also claims that the trial court erred in overruling his objection to the state's line of questioning regarding the jury's ability to convict solely based on eyewitness testimony and based solely on one witness's testimony. Johnson's six remaining claims assert ineffective assistance of trial and direct appeal counsel. Johnson contends that trial counsel was ineffective for (1) failure to investigate and call

exculpatory witnesses Yolanda Love-Johnson and Quintera Smallwood, (2) failure to challenge for cause the prosecutor's pretextual peremptory strike against a potential qualified juror Woolf, (3) failure to object to the prosecutor's improper statements during closing argument that he was a cold-blooded killer, and (4) failure to object to the prosecutor improperly vouching for witnesses Danielle Russell, Katrina Barnett, Dianne Moore[3], and Robert Gill during closing argument. Johnson contends that direct appeal counsel was ineffective for failure to bring a claim regarding the trial court's erroneous admission of Katrina Barnett's previous trial testimony and failure to brief assertion on appeal that the trial court erred in allowing the state to play a recording of Dianne Moore's prior statement. Johnson admits that claims six through ten are procedurally defaulted, but contends that he has grounds to excuse the default.

Respondents contend that all of Johnson's claims lack merit and/or are procedurally defaulted and the Petition should be denied.

## A. Trial Court Error

"In the habeas context, rules of evidence and trial procedure are usually matters of state law." *Bucklew v. Luebers*, 436 F.3d 1010, 1018 (8th Cir. 2006). "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Bucklew*, 436 F.3d at 1018. In making this determination, the federal habeas court "must review the totality of the facts in the case and analyze the fairness of the particular trial under consideration." *Hobbs v.*

---

[3] Dianne Moore's name is spelled Dianne and Diane in various portions of the record. The undersigned will use the spelling used by counsel- Dianne.

*Lockhart*, 791 F.2d 125, 128 (8th Cir. 1986). "Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." *Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000).

> **1.** **Admission of High Speed Car Chase and Gun Seized During Chase (Claims 1 and 2)**

In claims one and two, Johnson contends that the trial court erred in admitting evidence and testimony regarding the high speed chase and recovery of the gun. Johnson asserts that these were inadmissible as evidence of prior bad acts and more prejudicial than probative. Before trial, Johnson filed a Motion in Limine to exclude testimony regarding the circumstances of his arrest, including the extended high speed chase with the police and the assertion that he threw a gun out of the window. (Resp't Ex. Ex. B. at 21-22.) He also filed a Motion to Exclude Weapon. (Resp't Ex. Ex. B. at 26-27.) The trial court denied Johnson's motions. (Resp't Ex. A at 181-84.)[4] Testimony regarding the high speed chase and recovery of the gun were introduced at Johnson's trial. On direct appeal, the Missouri Court of Appeals found that based on state law, admission of the testimony regarding the high speed chase was relevant as indicating consciousness of guilt and remoteness of time only addressed the weight of the evidence not admissibility. (Resp't Ex. E at 6-7.) The appellate court also found that based on state law, the weapon was admissible into evidence even if it was not directly related to the crime. (Resp't Ex. E at 7-8.) The appellate court did not address whether the weapon was evidence of prior bad acts, because that issue was not preserved for review. (Resp't Ex. E at 7.)

"[There] is no due process violation simply because a trial court admits evidence of a defendant's uncharged bad acts." *Harris v. Bowersox*, 184 F.3d 744, 752 (8th Cir. 1999). "No due process violation exists for the admission of prior bad acts testimony unless it can be said

---

[4] For ease of reference, when citing to the trial testimony in Exhibit A, the undersigned will refer to the page number in the transcript rather than the bates stamped numbers provided by Respondents.

that the testimony was so conspicuously prejudicial or of such a magnitude that it fatally infected the trial and deprived the defendant of fundamental fairness." *McDaniel v. Lockhart*, 961 F.2d 1358, 1360 (8th Cir. 1992). Reviewing the totality of the facts in this case, the undersigned finds that admission of testimony of the high speed chase and the discarded gun did not violate Johnson's federal constitutional rights. The admission of this evidence was not so prejudicial that he was denied due process, especially considering the other evidence against him. Johnson was identified as the shooter by more than one person who personally knew him. Even if this evidence had been excluded, there is no guarantee that the result of the trial would have been different. Therefore, the undersigned recommends denial of relief on claims 1 and 2 of the Petition.

### 2.  State's *Voir Dire* regarding Burden of Proof (Claims 3 and 4)

In claims three and four, Johnson challenges the prosecutor's *voir dire* questioning. During *voir dire*, the prosecutor asked the jury panel whether they would be able to (1) convict Johnson based solely on eyewitness testimony and (2) whether they would be able to convict on the testimony of only one eyewitness. (Resp't Ex. A at 117-142.) The trial judge overruled Johnson's counsel's objection to the line of questioning regarding whether the jurors could convict based solely on eyewitness testimony. (Resp't Ex. A at 118-19.) Johnson's attorney did not object specifically to the question whether the jurors could convict based on the testimony of one witness. Johnson contends that the trial court erred in overruling his objection to this line of questioning and not *sua sponte* limiting the state's line of questioning. Johnson states that the questioning was irrelevant, immaterial, and designed to confuse and mislead the jury regarding the burden of proof, because the state knew that it had other evidence. The Missouri Court of Appeals found that the trial court's overruling of the objection was not an abuse of discretion,

because it is necessary for the prosecutor to establish what the potential jurors associate with the prosecutor's burden of proof. (Resp't Ex. E at 9.) The court of appeals also found that because the prosecutor has the ability to bring a case based solely on eyewitness testimony or even one witness's testimony, the prosecutor's questioning was appropriate. (Resp't Ex. E at 10.)

Reviewing the totality of facts and the fairness of the trial, the undersigned finds that Johnson has not shown the violation of a constitutional right. "No hard-and-fast formula dictates the necessary depth or breadth of *voir dire*." *Skilling v. United States*, 561 U.S. 358, 386 (2010). "The conduct of *voir dire* is generally left to the trial court's sound discretion." *Nicklasson v. Roper*, 491 F.3d 830, 835 (8th Cir. 2007). "*Voir dire* plays a critical role in assuring criminal defendants that their Sixth Amendment right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge cannot fulfill the responsibility to remove prospective jurors who may be biased and defense counsel cannot intelligently exercise peremptory challenges." *Ramsey v. Bowersox*, 149 F.3d 749, 756 (8th Cir. 1998) (citing *United States v. Spaar*, 748 F.2d 1249, 1253 (8th Cir. 1984)). The five jurors who testified that they could not convict based on eyewitness testimony alone or the testimony of one witness were stricken for cause without objection. As Johnson acknowledges, the jury panel still contained more than forty venirepersons who stated they could convict based on eyewitness testimony. Moreover, the crux of the prosecution's case was the eyewitness testimony. Individuals who personally knew Johnson in some manner identified him as the shooter. If a juror requested additional proof beyond the eyewitness testimony, that juror would be holding the state to a higher burden of proof, which goes against the court's instructions. Therefore, the undersigned finds that the state court's findings and conclusions in this matter did not violate Johnson's federal constitutional rights. The undersigned recommends that relief be denied on Claims 3 and 4.

## B.     Ineffective Assistance of Counsel

"The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "An accused is entitled to be assisted by an attorney, whether retained or appointed who plays the role necessary to ensure that the trial is fair." *Id*. To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland*, 466 U.S. at 687-88.

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The court must then examine the totality of the circumstances in order to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "Miscues and omissions are inevitable in any case and there is no such thing as a perfect trial." *Medearis v. United States*, 469 F.Supp. 779, 785 (D.S.D. 2006).

To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Such "reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to the law." *Id.* at 694.

It is important to note that "there is no reason for a court deciding an ineffective assistance claim to approach the [two-pronged] inquiry in [a pre-determined] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. It is unnecessary, therefore, to prove that counsel's performance fell below an objective standard of reasonableness before determining the presence or absence of resulting prejudice.

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190) (2011)). "First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is reasonably likely that the result would have been different absent the errors." *Williams*, 695 F.3d at 831 (citing *Strickland*, 466 U.S. at 696)). "To satisfy Strickland, the likelihood of a different result must be substantial not just conceivable." *Id.* Second, under AEDPA, the Court must give substantial deference to the state court's predictive judgment. *Id.* Therefore, "[s]o long as the state court's decision was not "contrary to" clearly established federal law, the remaining question under the "unreasonable application" clause of § 2254(d) is "whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect." *Id.* at 831 (*citing Harrington v. Richter*, 562 U.S. 86, 101

(2011)).  This standard is difficult, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington*, 562 U.S. at 102.

### 1.    Failure to Investigate and Call Exculpatory Witnesses (Claim 5)

In his first ineffective assistance of counsel claim, Johnson asserts that trial counsel was ineffective for her failure to investigate and call Yolanda Love-Johnson, his wife, and Quinetra Smallwood to testify on his behalf at trial.  Johnson presented this claim in his Rule 29.15 Amended Motion to Vacate, Set Aside, or Correct Sentence.  (Resp't Ex. F at 32-43.)  The post-conviction motion court allowed counsel to depose Johnson and the court heard live testimony from Love-Johnson, Smallwood, and Johnson's trial counsel.  (Resp't Exs. J, K.)  The post-conviction motion court then denied Johnson' Rule 29.15 motion.  (Resp't Ex. F at 54-63.)  Johnson appealed the denial of the Rule 29.15 motion, which was affirmed on appeal.  (Resp't Exs. G, I.)  The court of appeals affirmed the denial of Johnson's claim based on the motion court's credibility findings.  (Resp't Ex. I at 8-9.)  The motion court had found that Johnson, Love-Johnson, and Smallwood were not credible and Johnson's trial counsel was credible. (Resp't Ex. F at 57-59.)

Trial counsel's failure to call witnesses is presumed to be reasonable trial strategy. "Decisions relating to witness selection are normally left to counsel's judgment and this judgment [should not] be second guessed on hindsight."  *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990).  An attorney's decision not to interview or call a particular witness must be viewed from the perspective of counsel at the time the decision was made.  *United States v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009).  "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony probably would have changed the outcome of the trial."  *Siers v. Weber*, 259

F.3d 969, 974 (8th Cir. 2001). Trial counsel is not ineffective for failing to call witnesses that he does not know about. *Owens v. Dormire*, 198 F.3d 679, 682 (8th Cir. 1999) (citing *United States v. Davidson*, 122 F.3d 531, 538 (8th Cir. 1997) (trial counsel's failure to call a witness whom the defendant had not asked him to interview does not constitute ineffective assistance of counsel)). "In conducting this analysis, [the Court considers]: (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." *Id.* There is no prejudice if, factoring in the uncalled witnesses, the government's case remains overwhelming. *Armstrong v. Kemna*, 590 F.3d 592, 605 (8th Cir. 2010).

In this case, the post-conviction motion court found that Johnson and his exculpatory witnesses were not credible. In a habeas proceeding, a determination of a factual issue made by a state court is presumed to be correct. 28 U.S.C. § 2254(e). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.* "The deference owed to the state trial court pursuant to § 2254(e)(1) includes deference to its credibility determinations." *Smulls v. Roper*, 535 F.3d 853, 864 (8th Cir. 2008). The undersigned defers to the state court's findings regarding credibility and Johnson has not rebutted the presumption of correction by clear and convincing evidence. Johnson was charged with first-degree murder, second degree assault, and armed criminal action, crimes that could result in a life sentence without parole. It is improbable that Johnson would go through two trials knowing that his counsel has failed to call two alibi witnesses and not inquire as to why she did not investigate or call them. The crime occurred in 2005 and the two trials were held in 2008. Love-Johnson attended both trials and according to her testimony never spoke to trial counsel about being an

alibi witness. Johnson's trial counsel testified that she spoke to Love-Johnson about the case several times and she either did not know Love-Johnson was an alibi witness or that she was a good one. Johnson admits he was at the location of the shooting and eyewitnesses who knew him testified that he shot the victims. The undersigned grants deference to the motion court's credibility findings and Johnson has not provided clear and convincing evidence that those findings are not entitled to deference. Therefore, the undersigned recommends that relief on claim 5 be denied.

### 2. Procedurally Defaulted Claims (Claims 6 through 10)

Next, Johnson admits that claims six through ten are procedurally defaulted. "Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and undercuts the State's ability to enforce its procedural rules." *Murray v. Carrier,* 477 U.S. 478, 491 (1986). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). To overcome the default, a defendant must demonstrate either cause and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. 722 at 750.

To show cause for the default, defendant must demonstrate that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. *Murray,* 477 U.S. at 488. For example, a defendant could demonstrate that the factual or legal basis for a claim was not reasonably available to counsel or some interference by officials made compliance impracticable. *Id* at 488. While ineffective assistance of counsel constitutes cause for a procedural default, the exhaustion doctrine generally requires that an ineffective assistance

claim be presented to the state courts as an independent claim before it may be used to establish

cause of a procedural default in federal habeas proceedings. *Id*. at 489. An ineffective assistance

of counsel claim asserted as cause for the procedural default of another claim can itself be

procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). This procedural

default may be excused if the prisoner can then satisfy the cause-and-prejudice standard with

respect to that claim. *Id.*

Section 2254(i) provides that "the ineffectiveness or incompetence of counsel during

Federal or State collateral post-conviction proceedings shall not be a ground for relief in a

proceeding arising under section 2254." 28 U.S.C. § 2254(i). The Supreme Court has

recognized a limited exception to this rule. In *Martinez v. Ryan*, the Supreme Court held:

> Where under state law, claims of ineffective assistance of
> trial counsel must be raised in an initial-review collateral
> proceeding, a procedural default will not bar a federal habeas
> court from hearing a substantial claim of ineffective
> assistance at trial, if in the initial review collateral
> proceeding, there was no counsel or counsel in that
> proceeding was ineffective.

*Martinez v. Ryan,* 132 S.Ct. 1309, 1320 (2012). The Eighth Circuit has held that *Martinez* does

not stand for the proposition that the failure to preserve claims on appeal from a post-conviction

proceeding can constitute cause. *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (citing

*Martinez*, 132 S.Ct. at 1320) (holding does not concern attorney errors in other kinds of

proceedings, including appeals from initial-review collateral proceedings).

Because, Johnson has defaulted these claims and Johnson is claiming that his default

should be excused pursuant to *Martinez*, the undersigned will determine whether the claims have

substantial merit that would excuse the default.

### a.  Trial Counsel's Failure to Challenge Prosecutor's Juror Strike (Claim 6)

Johnson contends that trial counsel was ineffective for failing to challenge the prosecutor's peremptory strike of venireperson Woolf.  During *voir dire*, venireperson Woolf, a college professor, told the Court that one of the detectives who was testifying, was a former student of hers.  (Resp't Ex. A at 25-27.)  Woolf noted that she was a psychology professor at a local university.  (Resp't Ex. A at 26.)  Woolf disclosed that she taught the psychology of mass violence, *e.g.*, terrorism and genocide and she studies the psychology of perpetrators.  (Resp't Ex. A at 27.)  Regarding her evaluation of the evidence, Woolf stated, "Certainly, I would listen to it, take it in, probably be fair and impartial.  It would go through the lens of what I know … So I don't know whether that would be a problem or not."  (Resp't. Ex. A at 27.)  She also stated, "Well, the information I would hear, I would critically evaluate it based on what I know about the research literature."  (Resp't Ex. A at 27.)  Woolf later indicated that she was not sure if she was going to require more than eyewitness testimony, because she stated "it depends on the quality of the testimony.  I'm familiar with the research literature on this and I know there are certain situations that are better than others."  (Resp't Ex. A at 124.)  She also stated, "I know there are certain situations where testimony is given when it's highly unreliable, no matter how much someone believes it."  (Resp't Ex. A at 126.)  The state struck Woolf for cause and Johnson's trial counsel did not object.  (Resp't Ex. A at 163.)

"[The] proper test for exclusion of a juror for cause is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  *Sweet v. Delo*, 125 F.3d 1144, 1156 (8th Cir. 1997) (citing *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).  "The courts presume that a prospective juror is

impartial, and a party seeking to strike a venire member for cause must show that the prospective juror is unable to lay aside his or her impressions or opinions and render a verdict based on the evidence presented in court." *Moran v. Clarke*, 443 F.3d 646, 650 (8th Cir. 2006). Deference must be given to the trial judge who sees and hears the juror. *Wainwright*, 469 U.S. at 426.

In this case, Woolf knew one of the witnesses and repeatedly indicated that she would evaluate the evidence based on sources outside of the evidence, including "research literature." Even after attempted rehabilitation, she was unable to state conclusively she would base her decision solely on the evidence presented in court. (Resp't Ex. A at 125-26) An inability to follow the trial court's instructions is legal cause for striking a juror. Johnson has not alleged any reason why the strike of Woolf for cause violated his federal constitutional rights. Therefore, Johnson cannot show his trial counsel was ineffective for failure to object to the strike for cause or that he was prejudiced by the failure to object. Johnson has not shown that this ineffective assistance of trial counsel claim has substantial merit. Consequently, because he cannot show that this underlying claim has substantial merit, he cannot establish excuse for procedurally defaulting this claim due to ineffective assistance of post-conviction counsel. The undersigned recommends that relief on claim six be denied.

      **b.**      **Trial Counsel's Failure to Object to Prosecutor's Improper Closing Argument (Claim 7)**

Next, Johnson contends that trial counsel was ineffective for failing to object when the prosecutor stated the following:

> Cold-blooded, ladies and gentlemen. Those are the only two words that describe the actions and conduct of the defendant on June 7, 2005. Cold-blooded is when you take a gun, you aim it point blank in a car full of people, strangers, people the defendant did not even know, you unload that weapon and you walk away. That is cold-blooded. Cold-blooded, ladies and gentlemen is when you go back to your friends

> who just witnessed you blow away a car full of people,
> killing one, people you know, people you hang out with
> everyday who saw this horrible, horrible crime committed,
> and you go to them and you threaten them not to tell anyone
> or else. Those actions, ladies and gentlemen are those of a
> cold-blooded killer and that is exactly what the defendant is.

(Resp't Ex. A at 384). Johnson contends that the prosecutor's comments inflamed the passion of the jury and exceeded proper and legitimate argument by engaging in a personal and inflammatory attack.

Although not every improper and unfair argument of a state prosecutor should be found to be a federal due process violation, it does not insulate all prosecutorial comments from federal constitutional objections. *Caldwell v. Mississippi*, 472 U.S. 320, 338 (1985). "A prosecutor's comments can violate the Fourteenth Amendment if they so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Kennedy v. Kemna*, 666 F.3d 472, 481 (8th Cir. 2012). It is not enough that the prosecutor's remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The errors must be of constitutional magnitude, a determination made by considering the totality of circumstances. *Barnett v. Roper*, No. 4:03-CV-614 ERW, 2006 WL 2475036 at *66 (E.D. Mo. Aug. 24, 2006).

> It is improper for a prosecutor to make comments that are
> likely to inflame bias in the jury and to result in a verdict
> based on something other than the evidence. But a
> prosecutor's obligation to seek justice rather than merely to
> win a case does not preclude him from offering a spirited
> statement of the grounds for conviction based on the
> evidence. So long as prosecutors do not stray from evidence
> and the reasonable inferences that may be drawn from it,
> they, no less than defense counsel, are free to use colorful
> and forceful language in their arguments to the jury.

*U.S. v. Mullins*, 446 F.3d 750, 759 (8th Cir. 2006). "To establish ineffective assistance of counsel for failing to object to a prosecutor's closing argument, [the petitioner] must demonstrate, as in every ineffective assistance claim, not only that counsel's performance was deficient, but also that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different." *Middleton v. Roper*, 455 F.3d 838, 849 (8th Cir. 2006).

In this case, assuming without deciding that the prosecutor's comments were improper, the undersigned finds that that there is no reasonable probability that absent the prosecutor's comments that the verdict would have been different. There was overwhelming evidence of Johnson's guilt. More than one eyewitness, who personally knew Johnson, identified him as the shooter. He admitted he was at the scene when the shooting started. Viewing the closing argument as a whole, the comments referring to him as "cold-blooded" encompassed a small portion of the closing argument. Moreover, the trial judge instructed the jury that arguments of counsel were not evidence and their deliberations must be governed by evidence, reasonable inferences drawn therefrom, and the law as given in the instructions. (Resp't Ex. A at 383, Ex. B at 45.) Based on the foregoing, Johnson cannot show his trial counsel was ineffective for failure to object to the use of the term "cold-blooded" to describe him during closing argument. Johnson has not shown that this ineffective assistance of trial counsel claim has substantial merit. Consequently, because he cannot show that this underlying claim has substantial merit, he cannot establish an excuse for procedurally defaulting this claim due to ineffective assistance of post-conviction counsel. The undersigned recommends that relief on claim seven be denied.

c. **Trial Counsel's Failure to Object to Prosecutor's Improper Witness Vouching (Claim 8)**

Next, Johnson contends that he received ineffective assistance of trial counsel when his trial counsel failed to object to the prosecutor improperly vouching for the witnesses Danielle Russell, Katrina Barnett, Dianne Moore, and Robert Gill during closing argument. Johnson states that trial counsel's vouching for these witnesses also improperly mischaracterized the evidence.

"Improper vouching may occur when the government: (1) refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that are unavailable to the jury, (2) implies a guarantee of truthfulness; or (3) expresses a personal opinion about the credibility of a witness." *United States. v. McClellon*, 578 F.3d 846, 858 (8th Cir. 2009) (citing *United States v. Benitez-Meraz*, 161 F.3d 1163, 1167 (8th Cir. 1998)). "Attempts to bolster a witness by vouching for his credibility are normally improper." *McClellon*, 578 F.3d at 859 (citing *United States v. Jackson*, 915 F.2d 359, 361 (8th Cir. 1990)).

After a review of the prosecutor's closing argument, the undersigned does not find any basis for an improper vouching claim. The portions identified by Johnson as improper vouching constitute no more than a summary of the witnesses' testimony and comparison with other evidence admitted at trial. (Resp't Ex. A at 390-93.) "The context of the remarks establishes that the prosecutor was arguing the credibility of her witnesses, not vouching for their credibility." *Bass v. United States*, 655 F.3d 758, 761 (8th Cir. 2011). "The prosecutor did not ask the jury to rely on her in making its decision." *Id.* Based on the foregoing, Johnson cannot show his trial counsel was ineffective for failure to object to improper vouching during closing argument. Johnson has not shown that this ineffective assistance of trial counsel claim has

substantial merit. Consequently, because he cannot show that this underlying claim has substantial merit, he cannot establish an excuse for procedurally defaulting this claim due to ineffective assistance of post-conviction counsel. The undersigned recommends that relief on claim eight be denied.

> ### d. Direct Appeal Counsel's Failure to Appeal Claim that Trial Court Erred in Allowing Previous Trial Testimony of Katrina Barnett to be Read into Evidence and Allow State to Play Recorded Prior Statement of Dianne Moore (Claims 9 and 10)

Finally, Johnson contends that direct appeal counsel was ineffective for failing to assert two claims: (1) trial court error in allowing previous trial testimony of Katrina Barnett to be read into evidence and (2) trial court error in allowing the state to play a recorded prior statement of Dianne Moore. The Sixth Amendment includes a guarantee to the right of effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Johnson must satisfy both prongs of the *Strickland* test to prevail on his claim of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). Therefore, Johnson must show that the appellate attorney's performance was below the reasonable standard of competence and that there is a reasonably probability that the result would have been different absent the attorney's deficient performance. *Gee v. Groose*, 110 F.3d 1346, 1352 (8th Cir. 1997). "Reasonable appellate strategy requires an attorney to limit the appeal to those issues counsel determines have the highest likelihood of success." *Gee*, 110 F.3d at 1352. "Importantly, if an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that meritless issue on appeal. *Kerns v. Bowersox*, No. 4:06-CV-1755 TCM, 2010 WL 1049841 at *13 (E.D. Mo. Mar. 18, 2010).

### i.	Katrina Barnett (Claim 9)

Johnson contends that the state failed to prove that Barnett was truly unavailable for the second trial and that it deprived him of the opportunity to cross-examine her based on the new inconsistencies with her testimony and the testimony of other witnesses at the second trial. During trial, the state requested to proffer the prior recorded testimony of Barnett to establish her unavailability.  (Resp't Ex. A at 295.)  Then, the prosecutor's investigator testified that he made unsuccessful attempts to locate Barnett by calling all the phone numbers he had previously used to contact her, visited locations that he had transported her to and from on previous dates, spoke to her mother, and made calls to other emergency contacts.  (Resp't Ex. A at 296-298.)  The trial judge signed an writ of body attachment approximately two weeks before the second trial. (Resp't Ex. B at 20.)  At the time of trial, the body attachment remained unsatisfied.  (Resp't Ex. A at 300.)  Johnson's trial counsel made a continuing objection to the introduction of Barnett's testimony from the first trial.  (Resp't Ex. A at 300.) The trial judge found that Barnett was unavailable and allowed the state to produce the testimony from the first trial.  (Resp't Ex. A at 300).  Barnett's prior testimony was read to the jury (Resp't Ex. A at 323.)  Johnson's trial counsel also filed a motion for judgment of acquittal or in the alternative for a new trial, because the state failed to show that Barnett was out of state, serving military service, incapacitated for any reason, or deceased.  (Respt' Ex. B at 51-53.)

"The Sixth Amendment guarantees a criminal defendant the right to confront witnesses against him.  An exception exists when a witness is actually unavailable at trial, and his prior testimony bears sufficient indicia of reliability."  *Lam v. Iowa*, 860 F.2d 873, 875 (8th Cir. 1988) (citing *Mancusi v. Stubbs*, 408 U.S. 204, 216 (1972)).  As stated previously, a ruling on the

admission or exclusion of evidence in a state trial rarely rises to the level of a federal constitutional violation." *Nebinger*, 208 F.3d at 697. Under Missouri state law, a witness is unavailable if the state has made a good faith effort to obtain the witness and the state exercised due diligence to secure the individual as a witness. *State v. Sanders*, 903 S.W.2d 234 (Mo. Ct. App. 1995).

Johnson's counsel cross-examined Barnett at the first trial; therefore, he had the opportunity to cross-examine her even if he did not have the ability to do a second cross-examination in light of the evidence presented at the second trial. The Confrontation Clause "guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense, might wish." *United States v. Owens*, 484 U.S. 554, 557 (1988). The undersigned finds no federal constitutional violation in the trial court's examination regarding Barnett's availability for trial. The prosecutor's office searched for Barnett at all known locations and received a body attachment so that she could be taken into custody. Johnson has no evidence that the prosecutor's statements were not true and the record establishes that a body attachment was issued by the trial court. "[W]hen a witness disappears before trial, it is always possible to think of additional steps the prosecution might have taken to secure the witness' presence, but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." *Hardy v. Cross*, 132 S.Ct. 490, 495 (2011).

Based on the foregoing, Johnson cannot show his appellate counsel was ineffective for failure to appeal the introduction of Barnett's testimony. Johnson has not shown that this ineffective assistance of appellate counsel claim has substantial merit. Consequently, because he cannot show that this underlying claim has substantial merit, he cannot establish an excuse for

procedurally defaulting this claim due to ineffective assistance of post-conviction counsel. The undersigned recommends that relief on claim nine be denied.

### ii.    Dianne Moore (Claim 10)

Then, Johnson states that the trial court erred in allowing a prior recorded statement of Dianne Moore to be presented at trial, because it constituted improper bolstering and was cumulative of Moore's trial testimony. Moore testified at trial on behalf of the prosecution. (Resp't Ex. A at 262-74.) In her testimony, Moore made some inconsistent statements about whether she actually saw Johnson shoot the gun into the car. During Moore's testimony, the prosecutor informed the court that she wanted to lay a foundation for impeaching Moore for changing her testimony at previous times and on direct examination. (Resp't Ex. A at 266-67.) After Moore's testimony, Detective Matthias Hanewinkel testified. During Detective Hanewinkel's testimony, the prosecutor sought to play a prior recorded statement from Moore. (Resp't Ex. A to 321.) Defense counsel objected to playing the tape, stating it was cumulative. (Resp't Ex. A at 321.) The trial court overruled the objection and the tape was played. (Resp't Ex. A at 321.)

Because Johnson's trial counsel only objected to the taped testimony as being cumulative, the undersigned will only address whether the prior taped statement was indeed cumulative and if Johnson has shown prejudice. The admissibility of evidence is a matter of state law and does not form a basis for habeas relief until the trial error is so great as to amount to a denial of due process. *Bucklew*, 436 F.3d at 1018. Missouri law allows a party to impeach its own witness when the party is surprised and prejudiced by the testimony. *Ruff v. Wyrick*, 709 F.2d 1219, 1220 (8th Cir. 1983). "Evidence is said to be cumulative when it relates to a matter so fully and properly proved by other testimony as to take it out of the area of serious dispute."

*Black v. State*, 151 S.W.3d 49, 56 (Mo. Ct. App. 2004). Under Missouri law, "a trial court does not have discretion to reject evidence as cumulative when it goes to the very root of the matter in controversy or relates to the main issue, the decision of which turns on the weight of the evidence." *Id.* Moore provided inconsistent testimony during direct examination and inconsistent statements to the police, therefore it was not improper for the trial court to admit this evidence. Moreover, Johnson cannot establish prejudice. Reviewing Moore's testimony in light of all the evidence at trial and admission of Moore's conflicting testimony and conflicting prior statements, there is no reasonable probability that the result would have been different absent the admission of her prior testimony. The conflicting testimony and statement more likely helped Johnson than hurt him.

Based on the foregoing, Johnson cannot show his appellate counsel was ineffective for failure to appeal the introduction of Moore's prior Statement. Johnson has not shown that this ineffective assistance of appellate counsel claim has substantial merit. Consequently, because he cannot show that this underlying claim has substantial merit, he cannot establish an excuse for procedurally defaulting this claim due to ineffective assistance of post-conviction counsel. The undersigned recommends that relief on claim ten be denied.

## IV.    Conclusion

Based on the foregoing, the Court finds that Johnson's request for relief pursuant to 28 U.S.C. § 2254 should be denied. The undersigned finds that the state court's findings and conclusions regarding Johnson's claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Further, because Johnson has made no showing of denial of a constitutional right, the undersigned recommends that the Court not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson,* 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of Court shall substitute Troy Steele in place of Jay Cassady as Respondent.

**IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus be **DENIED**. [Doc. 1.]

**IT IS FURTHER RECOMMENDED** that, for the reasons stated herein, any motion by Petitioner for a Certificate of Appealability be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 27th day of April, 2016.


    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE